**SO ORDERED.**

**SIGNED this 15th day of March, 2011.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| HOLLY A. ZEMAN, | 09-52559 |
| *DEBTOR* | CHAPTER 13 |
| HOLLY A. ZEMAN, | |
| *PLAINTIFF* | |
| V. | ADV. NO. 09-05081 |
| THOMAS BLAKE HUMPHREYS, JR. AND DEREK SCOTT HUMPHREYS, | |
| *DEFENDANTS* | |

**MEMORANDUM DECISION**

Following the trial of this matter the court requested post-trial briefing on the issue of the

validity of the release, signed by Holly Zeman ("Zeman") and TJ Humphreys ("T. Humphreys") during Zeman's bankruptcy case without court approval, following the dismissal of Zeman's bankruptcy case. The following discussion constitutes this court's findings of fact and conclusions of law: In 2008, Zeman's ex-husband took out a second note on the couple's home to enable him to invest in his ex-son in law's business. In exchange the Humphreys brothers (one of whom was Mr. Zeman's son in law) executed a note to Zeman in the amount of $178,246.67. Zeman received this note as part of her divorce settlement in May, 2008. The brothers were to pay Zeman $3,000 a month, beginning on April 1, 2008. The note was to mature on January 1, 2011. Shortly after payments were to commence Zeman ran into collection problems. The brothers consistently paid her less than the $3,000 per month they owed. By late 2008 Zeman was in deep financial trouble. She depended on the $3,000 per month to pay her living expenses. At some point during the summer of 2008 the brothers decided (and Zeman agreed) that each brother would pay half of the monthly amount owed to Zeman. After entering into this agreement, Zeman continued to experience problems collecting her monthly payments from Derek Humphreys, but T. Humphreys appears to have remained current on his obligations. Zeman eventually filed for bankruptcy in October, 2008. In December, 2008, Zeman and T. Humphreys entered into a revised note (apparently intended to supersede the original note) for $50,000 with monthly payments of $750. In February, 2009, Zeman, still experiencing financial difficulties, asked T. Humphreys for a lump sum payment. In exchange for a $10,000 lump sum payment T. Humphreys asked Zeman to release him of his obligations under the original note. Zeman signed the release, but did not get prior approval from the bankruptcy court.

Zeman eventually filed a complaint against the Humphreys brothers in her current (second) bankruptcy case, seeking to collect on the original note. T. Humphreys asserted that Zeman released him from his obligations under the note when she signed the release in February, 2009. Zeman previously received a judgment against Derek Humphreys from this court. Regarding her claim against T. Humphreys, Zeman claimed that she never intended to release him from his obligations under the note. She maintained that signed the release because she desperately needed money to pay her bills. She claimed she did not know the true nature of the release. Zeman signed the release against the advice of counsel. T. Humphreys pointed out that Zeman kept the $10,000 and never made demand for payment of a different amount after receiving that money. Rather, argued T. Humphreys, Zeman only complained about lack of payment from Derek Humphreys following her release of T. Humphreys. T. Humphreys argued that even if Zeman did not have the authority to sign the release (because she did not get prior court approval), she nonetheless ratified the release by her conduct (i.e. not seeking additional payment from T. Humphreys) following the dismissal of her first bankruptcy case in April, 2009.

*Legal Analysis*

Section 549 of the Bankruptcy Code provides that a transfer of property of the estate that occurs post-petition may be avoided by the trustee if the transfer was not authorized under the Code or by the court. *See* 11 U.S.C. § 549(a)(1) and (2)(B). *See also 40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir. 2003) ("The purpose of section 549 . . . is to provide a just resolution when the debtor himself initiates an unauthorized postpetition transfer. The general rule in such situations is that the trustee is authorized to avoid the transfer in order to protect the creditors."). Section 549(a) has generally been interpreted as applying to *voluntary* (albeit unauthorized) post-petition transfers. *See Singleton v. Abusaad (In re Abusaad)*, 309 B.R. 895, 900 (Bankr. N.D. Tex. 2004) ("Section 549(a) allows a trustee is avoid certain voluntary transfers that occur post-petition and that were not otherwise authorized by the court pursuant to any of the applicable provisions of the Code."); *Ford v. Loftin (In re Ford)*, 296 B.R. 537 (Bankr. N.D. Ga. 2003) (noting that "section 362(a) prohibits involuntary removal of assets unless permitted by lifting of the stay" while "[s]ection 549(a) provides a remedy for the avoidance of *voluntary* transfers that are *unauthorized* ..."). Although BAPCPA changed the definition of "transfer" to include involuntary as well as voluntary transfers, some courts still consider the distinction when examining the application of section 549 to violations of the automatic stay. *See Hopkins v. Suntrust Mortgage (In re Ellis)*, 2010 Bankr. LEXIS 3040, at *8-10 (Bankr. D. Idaho Sept. 16, 2010). This issue is discussed in more detail below.

A "transfer" is defined, in part, as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing or parting with an interest in property." 11 U.S.C. § 101(54)(D). Executing a release of potential claims of the bankruptcy estate constitutes a transfer of property of the estate. *See Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583, 653 (Bankr. S.D. Tex. 2010) ("A release of claims constitutes a 'transfer,' as defined in § 101, because the releasing party is disposing of or parting with the right to assert future causes of action."); *e2 Creditors' Trust v. Farris (In re e2 Commun's, Inc.)*, 320 B.R. 849, 856 (Bankr. N.D. Tex. 2004) ("Common sense suggests that a release of claims is a 'transfer' of property -- i.e., a method of 'disposing of or parting with' property, as the releasing party gives up the right to assert the claims in the future. Moreover, concluding that a release of claims qualifies as a 'transfer' of property is consistent with the legislative history's guidance that 'transfer' should be broadly construed."); *but see Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988) (noting that while a debtor "could transfer physical possession of an automobile, for example, even though he has no authority, necessitating the use of section 549 to avoid the transfer[,] [a] release executed by the wrong person … is never effective to begin with and consequently there is no 'transfer' to be avoided under section 549.").

The trustee's power to avoid transfers pursuant to section 549 is discretionary. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir. 1989) (citing section 549 for the proposition that "the trustee may avoid a transfer of property of the estate—(1) that occurs after the

commencement of the case…" and noting that "the Bankruptcy Code specifically protects certain actions taken in violation of the automatic stay. Under section 549 some transactions made in violation of the stay will be deemed valid unless voided at the trustee's discretion."); *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. Pa. 1994) (citing section 549 and noting that "the Code expressly permits certain post-petition transactions that occur in violation of the automatic stay. Some transactions, for example, will be considered valid unless voided by the trustee."); *In re Brooks*, 79 B.R. 479, 480 (B.A.P. 9th Cir. 1987) ("The wording of § 549, which specifically addresses post-petition transfers, indicates that a transfer made in violation of the stay may be voidable at the trustee's discretion."). In short, the trustee may, but is not obligated to, avoid unauthorized post-petition transfers of property of the estate.

While the Fifth Circuit has stated that section 549 serves to protect certain post-petition transfers, including those carried out in violation of the stay, *see Sikes*, 881 F.2d at 179, other courts have interpreted section 549 more narrowly. In *New Orleans Airport Motel Assoc.*, *Ltd. v. Lee (In re Servicio, Inc.)*, the bankruptcy court for the Southern District of Florida disagreed with the approach taken by the Fifth Circuit in *Sikes*. The court noted that, under the Fifth Circuit's approach to stay violations—finding them voidable rather than automatically void[1]—section 549, including the time limits of section 549(d), would apply to acts taken in violation of the stay, thereby effectively limiting the time within one could bring an action under section 362, despite the fact that section 362 does not contain any time limits for bringing an action for violation of the stay. 144 B.R. 933, 936 (Bankr. S.D. Fla. 1992). To remedy this conflict the *New Orleans* court chose to interpret section 549(a) as applying to "postpetition transfers of property of the estate which are neither authorized, *nor expressly prohibited*." *Id.* Under this reading, the court maintained,

> section 549(a) does not apply to transfers in violation of the automatic stay since this is a transfer which is expressly prohibited. However, section 549(a) still applies to, for example, transfers of property of the estate allegedly not in the 'ordinary course of business,' for purposes of 11 U.S.C. § 363(c)(1).

*Id.* In a more recent case from the Northern District of Texas, the court conducted an extensive analysis of the applicability of section 549 to actions taken in violation of the automatic stay.

---

*See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) (stating that "we are persuaded that the better reasoned rule characterizes acts taken in violation of the automatic stay as voidable rather than void"); *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.)*, 345 F.3d 338, 344 (5th Cir. 2003) (expressing the view of the Fifth Circuit in 2003 that "violations [of the automatic stay] are merely voidable 'and are subject to discretionary cure'").

*United States v. Miller*, 2003 U.S. Dist. LEXIS 24884 (N.D. Tex. Dec. 22, 2003). The court first noted that the automatic stay provided by section 362(a) prohibits "all *involuntary* transfers of the bankrupt's assets …, while [o]ther sections of the Code provide for *voluntary* disposition of assets *if authorized* by the court." *Id.* at *43 (citing 11 U.S.C. § 363(c)(1)). The court then went on to address the application of section 549, stating,

> Section 549 … provides for avoidance of a transfer 'that is not authorized under this title or by the court.' U.S.C.A. § 549(a). By implication, since the avoidance provided for by § 549 is not one of the authorized exceptions to the automatic stay enumerated by § 362(b) for *involuntary* transfers, and is not one of the *voluntary* actions that otherwise may be *authorized* by a court under other specific provisions of the Code, it must therefore apply to *voluntary* transfers that are, in its words, 'not authorized.'

*Id.* (citing *New Orleans Airport Motel Assocs., Ltd. v. Lee (In re Servicio, Inc.)*, 144 B.R. 933, 936 (Bankr. S.D. Fla. 1992)). Based on the distinction between *involuntary* transfers (prohibited by section 362) and *voluntary* transfers (avoidable under section 549), the court concluded that section 362 and section 549 "apply to mutually exclusive circumstances." The district court for the Northern District of Illinois reached the same conclusion in *Garcia v. Phoenix Bond & Indemnity Co. (In re Garcia)*, 109 B.R. 335, 338-39 (N.D. Ill. 1989). The court noted that "[a]ll actions which are not authorized by the Bankruptcy Code are not in violation of the automatic stay defined in § 362(a)," pointing out that section 362(a) is "targeted at the activities of creditors" and "does not specifically prohibit the debtor from willingly transferring an interest in property of the estate post-petition." *Id.* at 339. The court went on to note that section 549 still applied to an "entire realm of post-petition transfers," namely, "post-petition transfers in which the debtor is a willing participant, but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code." *Id.* Other courts have also concluded that section 549 does not apply to actions taken in violation of the stay. In *See Smith v. London (In re Smith)*, the court stated,

> [A] straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay … Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. Section 549 exists as a protection against unauthorized debtor transfers of estate property.

224 B.R. 44, 47-48 (Bankr. E.D. Mich. 1998). *See also In re Ellis*, 2010 Bankr. LEXIS 3040, at *9-10 (finding debtor's creation of new mortgage post-petition was best analyzed under section 549 because "the fundamental factor in determining whether analysis should proceed under §

362 or § 549 is the identity of the transfer-initiating party." If [] a *debtor* … initiates an unauthorized post-petition transfer of estate property, the § 362 automatic stay does not apply.… Instead, § 549 applies[.]"); *Glendenning v. Third Fed. Sav. Bank (In re Glendenning)*, 243 B.R. 629, 633-634 (Bankr. E.D. Pa. 2000) ("Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362….Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property.") *but see Kocurek v. Arnold (In re Thurman)*, 163 B.R. 95, 98 (Bankr. W.D. Tex. 1994) (stating that "even if [the post-petition transfer of a perfected security interest] were to violate the provisions of the automatic stay …, [because it] occurred post-petition, and [is] voidable and not void, the Trustee would necessarily need to invoke an avoidance power such as § 549 to avoid the transfer. Such avoidance actions would be subject to the statute of limitations found in § 549(d).").

While the conclusion in *Miller*—that section 549 does not apply to violations of the automatic stay—initially seems to conflict with the Fifth Circuit's statement in *Sikes* that "[u]nder section 549 some transactions made in violation of the stay will be deemed valid unless voided at the trustee's discretion," 881 F.2d at 179 (5th Cir. 1989), this latter statement was merely dicta. Furthermore, in *Bustamante v. Cueva (In re Cueva)*, the Fifth Circuit noted that, "[b]ecause § 362 does not prohibit a debtor from disposing of property belonging to the bankruptcy estate, § 549 provides additional protection to the estate for post-petition transactions neither subject to § 362(a) nor authorized by the court." 371 F.3d 232, 236 (5th Cir. 2004). Accordingly, it appears that the Fifth Circuit has impliedly recognized that section 549 applies to voluntary, debtor-initiated post-petition transactions, while section 362 applies to involuntary, creditor-initiated post-petition transactions.

Although stay violations are merely voidable in the Fifth Circuit (as opposed to void *ab initio* as they are in most other jurisdictions), this does not necessarily mean that stay violations can only be challenged under section 549 (including the time limitations of section 549(d), as assumed by the court in *New Orleans Airport Motel Assocs., Ltd.*, 144 B.R. at 936. While the conclusion that stay violations are *voidable* does seem to implicate section 549 (whereby a trustee *may* avoid certain transactions, *see In re Brooks*, 79 B.R. 480),1 the distinction between debtor-initiated (or "voluntary") and creditor-initiated (or "involuntary") transfers provides a better (and simpler) framework for analysis. Because, as discussed above, section 362 only applies to involuntary transfers, and section 549 applies only to voluntary transfers, then the void vs. voidable analysis is not determinative of the outcome when examining whether section 549

---

*See also In re PRINE*, 222 B.R. 610, at *9 (Bankr. N.D. Iowa 1997) (concluding that "because the Bank's perfection of lien [in violation of the stay] is void, no action is necessary to avoid it. Therefore, § 549(d) does not apply."). This finding illustrates that section 549 applies only to *voidable* transfers.

applies to a particular transaction. Instead, voluntary transactions will always be avoidable only pursuant to section 549. Involuntary post-petition transfers, including stay violations, may or may not be avoidable under section 549, depending on the jurisdiction. In the Fifth Circuit, all transactions (voluntary or not) are *voidable*, so the voluntary/involuntary inquiry is particularly helpful here. In the present case, because Zeman's execution of the release was (presumably) voluntary, it should be examined under section 549.

Zeman's execution of the release is best viewed as an unauthorized 363(b) transfer of estate property. *See Valucci v. Glickman, Berkovitz, Levinson & Weiner (In re Glickman, Berkovitz, Levinson & Weiner)*, 204 B.R. 450, 455 (E.D. Pa. 1997) (stating that "releases are likened to the post-petition sale of an asset, i.e., the cause of action, and should be reviewed by the bankruptcy court pursuant to § 363(b)"). Similarly, courts have found that the compromise of a cause of action constitutes a 363(b) transfer. *See Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.)*, 293 B.R. 479, 486 (Banrk. E.D. Mo. 2003) (stating that "any compromise of a cause of action that is property of the estate is a transfer of that asset that must comply with § 363(b)(1) to be enforceable"). Section 363(b) provides, in general, that the trustee may deal with estate property outside the ordinary course of business only after notice to creditors and a hearing. *See* 11 U.S.C. § 363(b). Section 363(b)(1) gives rise to a ssection 549(a)(2)(B) avoidance action because "absent notice and a hearing, a transaction outside the ordinary course of business is avoidable [under section 549]." *In re Nellson Nutraceutical, Inc.,* 369 B.R. 787, 796 n.14 (Bankr. D. Del. 2007).

Pursuant to section 549, the trustee is authorized to avoid post-petition transfers of property of the estate, but she must do so "before the earlier of (a) two years after the transfer or (b) the dismissal of the case." *United States v. Compean*, 2006 U.S. Dist. LEXIS 42447, at *7 (S.D. Tex. June 23, 2006) (citing 11 U.S.C. § 549(d)). Here, the debtor never sought to avoid or in any way challenge the release; because the case has been dismissed the time to avoid the release has passed. Thus, the issue becomes whether that avoidable (but not avoided) release remained or became valid following the dismissal of Zeman's first bankruptcy case.

Section 349(b) of the Bankruptcy Code provides, in relevant part, that upon dismissal, any transfer avoided under section 549 is reinstated and property of the estate re-vests in the entity "in which such property was vested immediately before the commencement of the case[.]" 11 U.S.C. § 349(b). Here, the transfer was never avoided, so the question concerns only the effect, if any, of the re-vesting provision of section 349 on a post-petition transfer that was not timely avoided under section 549. I found almost no case law on this precise issue. In *In re Brooks*, the Ninth Circuit BAP concluded that because the trustee had not objected to the bank's recording of a deed of trust (found to be a voidable stay violation) before the close of the debtor's bankruptcy case, "the statute of limitations ha[d] run on the trustee's avoidance

powers." 79 B.R. at 481. Thus, held the court, "because the trustee chose not to avoid the lien," the bank's security interest was immune from attack. *Id*. at 482. While this case does not directly address the effect of section 349 on an avoidable post-petition transaction, it does suggest that such transactions remain effective unless affirmatively avoided during the bankruptcy case.

In *United States v. Corpus*, a fairly recent case out of the Fifth Circuit, the Court concluded that a post-petition transfer carried out in violation of section 363(b) should be allowed to stand because no party had challenged the transaction under section 549 before the case was dismissed. 491 F.3d 205, 212-13 (5th Cir. 2007). In that case, the debtors had sold certain estate property during their bankruptcy case without notice and a hearing as required by section 363(b). *Id*. at 212. After the case was dismissed, certain parties, claiming to be creditors of the debtors, challenged the sale, arguing that it should be deemed void because the debtors had not complied with section 363(b). *Id*. The Court stated,

> Assuming arguendo that the [debtors] were required by § 363(b) to provide the [purported creditors] with notice of the sale, we agree with the district court that the statute of limitations [of section 549(d)] bars the [creditors] from asserting an interest in the Cottonwood property under the Bankruptcy Code. Section 549(a) provides that 'the trustee may avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and . . . (2)(b) that is not authorized under this title or by the court.' 11 U.S.C. § 549(a) … Section 549(d) further provides that '[a]n action or proceeding under this section may not be commenced after the earlier of (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed' … The Corpuses stipulated that the [debtors] transferred the Cottonwood property to [the purchaser] on March 25, 2003. And the [debtor's] petition for bankruptcy was dismissed on September 15, 2003. Consequently, under § 549(d), the time allowed for the Corpuses to petition the bankruptcy trustee to avoid the transfer expired on March 25, 2005. The Corpuses did not bring any action seeking to have the bankruptcy estate's trustee avoid the transfer before that date.

*Id.* at 212-13 (internal citations omitted). This case also does not directly address the re-vesting provision of section 349(b), but, because the court concluded that the sale should stand, this case suggests that the re-vesting provision does not unwind voluntary post-petition transfers. Additionally, it is worth noting that the district court in this case rejected the creditor's argument that title to the property re-vested in the debtor after dismissal of the debtor's case; the district court concluded that, under the doctrine of after-acquired title, even if the debtors did not convey good title when they sold the property during their bankruptcy, "following the dismissal, [the

purchaser's] title was perfected." *United States v. Compean*, 2006 U.S. Dist. LEXIS 42447, at *8 (S.D. Tex. 2006). Although the after-acquired title doctrine is a real property doctrine, the holding of *Compean* nonetheless suggests that transfers executed by a debtor during bankruptcy are not unwound by dismissal pursuant to section 349(b).

This result makes sense in light of the other provisions of section 349(b). Section 349(b)(1)(B) provides that transfers avoided during the bankruptcy case pursuant to section 549 will be reinstated upon dismissal of the case. 11 U.S.C. § 349(b)(1)(B). *See also Smith v. Mooney (In re Smith)*, 155 B.R. 145, 148 (Bankr. S.D. W. Va. 1993) (noting, after avoiding a post-petition transfer under section 549, that "should [the debtor's] bankruptcy be dismissed, so that the avoidance of the transfer would no longer be beneficial to all creditors, but only to the debtor, the avoided transfer will be reinstated pursuant to Bankruptcy Code § 349(b)(1)(B)"); *Camacho v. Homeq Servicing Corp. (In re Camacho)*, 311 B.R. 186, 194 (Bankr. E.D. Mich. 2004) (noting that if the debtors had succeeded in an action to recover a post-petition transfer of estate property under section 549, "the subsequent dismissal of the Chapter 13 case would have the effect of reinstating the transfers avoided under those sections"). If the re-vesting provision of section 349 were to re-vest property in the debtor that he had transferred, without authorization, during his bankruptcy case, then avoided transfers would receive better treatment than transfers that had not been avoided. This makes little sense, especially considering the purpose of section 549. "'The purpose of section 549 is to protect the estate in the … situation when an unauthorized transfer occurs, often because the debtor initiates an unauthorized postpetition transfer[.]'" *Miller*, 2003 U.S. Dist. LEXIS, at *54-55 (quoting *In re Ford*, 296 B.R. 537, 549 (Bankr. N.D. Ga. 2003)).

Thus, because there is no longer any estate to protect by way of avoidance actions after a bankruptcy case has been dismissed, transfers that were never actually avoided in the first place should receive the same treatment as those that were avoided; they should be allowed to stand. This result is also supported by a bankruptcy case out of the Northern District of Indiana that addressed the re-vesting provision of section 349 in relation to property that had been transferred out of the estate during bankruptcy. The court stated,

> It is noteworthy that section 349(b) does not mention or seek to reverse transfers *out* of the bankruptcy estate, such as those which might be made pursuant to section 363 … This would seem to indicate that section 349(b) was designed to deal only with the property that was still part of the estate on the date of dismissal. It does not attempt to deal with property which had already legitimately passed out of the bankruptcy estate.

*In re DePew*, 115 B.R. 965, 971 (Bankr. N.D. Ind. 1990). While this case speaks in terms of property that has been "legitimately" passed out of the estate, here, because no party objected to

Zeman's execution of the release within the time allowed by section 549(d), the transfer should be deemed legitimate. *See Sikes*, 881 F.2d at 179 ("Under section 549 some transactions … will be deemed valid unless voided at the trustee's discretion.").

In conclusion, because Zeman never challenged the release during her bankruptcy case, and because the time within which such a challenge could have been brought under section 549(d) has passed, the release should be deemed valid. Section 349(b) should not be applied to re-vest the transferred cause of action in Zeman. This conclusion is further supported by the purpose behind section 549–to protect the estate by providing a remedy for discriminatory treatment of creditors during a debtor's bankruptcy. Because there are no longer any creditors to protect by way of avoidance actions after a case has been dismissed, transfers that were never actually avoided prior to dismissal of the case should receive the same treatment as those that were avoided; they should be allowed to stand.

Finally, because the court finds that the release is valid and remains in effect, the court need not address T. Humphreys' ratification argument.

A form of judgment shall be submitted by counsel for the defendant, consistent with this decision.

# # #